**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

CASE NO.

ANDRES GOMEZ,

      Plaintiff,

v.

LIBERTY COUNTY, FLORIDA,

      Defendant.

---

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

---

COMES NOW Plaintiff Andres Gomez ("Plaintiff), by and through his undersigned counsel, and hereby sues Defendant Liberty County ("Defendant") for declaratory and injunctive relief, attorney's fees and costs (including, but not limited to, court costs and expert fees) pursuant to Title II of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12131 et. seq. ("ADA") and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504") and alleges as follows:

**INTRODUCTION**

1.    This is an action under Title II of the Americans with Disabilities Act of 1990 and under Section 505 of the Rehabilitation Act of 1973 through which Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act") is enforced to redress unlawful disability-based practices and to make Plaintiff Andres Gomez whole.

2.    Liberty County ("Defendant") is a public entity which has provided the website URL www.libertybocc.com as an information website ("Website") to Liberty County government for the general public (to anyone who accesses the Website). The

1

general public is able to access Liberty County's online content, which constitutes programs, services, and activities and information on the governmental functioning of Liberty County.

3.   Plaintiff Andres Gomez brings this action to stop the marginalization of the blind, vision impaired, and low vision citizens of (and visitors to) Liberty County.

4.   In order to meaningfully access the internet, blind and visually impaired individuals require that webpages be accessible and interface with screen reader software. Defendant's Website is not accessible by persons who are visually impaired and who utilize screen readers.

5.   Because Defendant's Website is not accessible for persons who are blind or low sighted, Defendant has denied Plaintiff Andres Gomez access to that Website.

6.   As such, Defendant has denied access to Plaintiff based on Plaintiff's disability (being low sighted and/or blind). In so doing, Defendant has denied Plaintiff his fundamental right to observe and participate in the democratic process of self-government. A citizen's right to meaningful participation in the political process and to access publicly available information needed to participate in the process is a fundamental right requiring heightened scrutiny.  *Johnny Reininger, Jr. v. State of Oklahoma*, Case No.: 5:16-cv-012141 (November 9, 2017) and *Natl Association of the Deaf (NAD) v State of Florida* 18-cv-21232-UU [DE #28] (June 18, 2018).

7.   Plaintiff brings this action against Defendant to enforce the requirement of Section 504 of the Rehabilitation Act that a public entity receiving or distributing federal financial assistance (which Defendant receives and distributes each year) must not deny persons with disabilities the benefits of its programs/ services.

8.   By failing to provide its Website in a manner that it interfaces with screen reader software, Defendant has deprived blind and visually impaired individuals of the benefits of its online content, which benefit is afforded to sighted (non-disabled) individuals. As such, Defendant has increased the sense of isolation and stigma that the ADA and Section 504 were meant to redress for individuals with disabilities.

9.   Defendant's denial of its publicly available online content to blind and visually impaired individuals violates Section 504 of the Rehabilitation Act and Title II of the ADA.

10.   Accordingly, Plaintiff seeks injunctive and declaratory relief to ensure that blind and visually impaired individuals have equal, effective and timely access to Defendant's publicly available online content within its Website.

## JURISDICTION AND VENUE

11.   Plaintiff is expressly authorized to bring this action pursuant to Title II of the Americans With Disabilities Act, 42 U.S.C. §§ 12131-12133 ("ADA"), incorporating by reference the remedies, procedures and rights under Sections 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 794, 794(a) ("Section 504"), incorporating the remedies, rights and procedures set forth in §717 of the Civil Rights Act of 1964, including the application of  §§ 706(f) through 706(k), 42 U.S.C. § 2000e-5(f)-(k).

12.   This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188. This Court's jurisdiction is proper under 28 U.S.C. §§ 451, 1331, 1337, and 1343.

13.   Plaintiff has met all conditions precedent to bring this action.

## PARTIES

### Andres Gomez

14.  Plaintiff Andres Gomez is a resident of the State of Florida, resides within the Southern Judicial District, is *sui juris*, is disabled and a qualified individual as defined by the ADA

15.    Plaintiff suffers severe macular degeneration and is legally blind. Plaintiff is substantially limited in the major life activity of seeing. As such, Plaintiff is a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA and as set forth at 29 USC §705(20).

16.  Plaintiff is an otherwise qualified individual with a disability in that Plaintiff is qualified to access Defendant's Website.

17.  Due to his disability, the Plaintiff requires that internet content be accessible and interface with screen reader software.

### Liberty County

18.  Defendant Liberty County is a local government entity, a body corporate and political subdivision of the State of Florida. Liberty County was created in 1855 when it was carved out of then Gadsden County.  Liberty County voters approved Liberty County Home Rule Charter became effective in 1973.

19.  Liberty County Home Rule and Chapter 125.01 of the Florida Statutes give the Liberty County Board of County Commissioners the ability to create (through a local public hearing ordinance procedure) local laws[1].  This process is done without having to go to the Florida Legislature to request special legislation to create these laws. The Board of County Commissioners appoints a County Administrator who implements Liberty

---

[1] that are not in conflict with or specifically prohibited by state general law or the Florida Constitution

County the policy and laws and manages the governmental agency of Liberty County. The Liberty County Board of County Commissioners is the governing body of Liberty County.  The Liberty County Board of County Commissioners distributes federal financial assistance through its budgetary and legislative process to Liberty County agencies and departments.  No person, agency or department is above the Liberty County Board of County Commissioners.

20.  Since Defendant is a "public entity," it is subject to Title II of the ADA, 42 U.S.C. §12131(1).

21.  On information and belief, Defendant is also a distributor/recipient of federal funds and as such, is also subject to the requirements of Sections 504 of the Rehabilitation Act.

## GENERAL ALLEGATIONS

22.  Defendant offers a service through its online Website at www.libertybocc.com ("Website") where interested persons can obtain pertinent information regarding living and visiting Liberty County. Plaintiff is such an interested person.

23.  Defendant's Website provides pertinent information on living and visiting Liberty County including (but not limited to): a report on Liberty County's drinking water quality[2], information regarding building and zoning in the county[3], and parks and recreation[4]. This information is made available by Defendant to generally inform the public of the services provided by Defendant.

---

[2] http://libertybocc.com/3-2/garbage-water/
[3]  http://libertybocc.com/3-2/building-and-zoning/
[4] http://libertybocc.com/3-2/parks-and-recreation/

24.   Defendant's Website contains a plethora of information including the Liberty County Commissioners decisions regarding matters which affect the public directly such as that regarding: garbage and water, building and zoning, and parks and recreation.

25.   Through Defendant's Website, interested persons can read about the legislative process of Liberty County, as well as learn about the community services and policies of Liberty County (including areas regarding garbage and water, building and zoning, and parks and recreation on demand.

26.   However, blind and/or visually impaired persons require screen reader software to read/comprehend Defendant's Website.

27.   Online "on-demand" viewing of the Defendant's Website is not an option available to persons with vision disabilities due to the fact that Defendant's Website does not interface with screen reader software as used by blind and visually impaired individuals. Plaintiff (who is legally blind) is such an interested person.

28.   As an active and social Florida resident, Plaintiff is interested in the quality of life, level of environmental concern with particular interest in water quality and the level of contaminants in Liberty County's drinking water, which would make Liberty County a viable visiting and living option.

29.   Furthermore, Plaintiff is interested in the persons holding elected positions in the government of Liberty County due to his search into racial slurs by elected officials (such as reported in the news regarding Liberty County Sheriff), and in the racial makeup of liberty county.

30.   Therefore on October 5, 2018 Plaintiff attempted to utilize Defendant's Website with the intent of educating himself about the quality of life and governmental functioning in Liberty County.

6

31.    When Plaintiff tried to interact and engage the Defendant through its Website, he encountered a Website that was not designed with accessibility (for the disabled) in mind.

32.    Defendant's Website is not fully designed and integrated with consideration for Universal design. Universal design is necessary so visually impaired individuals who use screen reader software can access the Website[5].

33.    Furthermore, Defendant's Website does not have the sign of website accessibility[6].

34.   Therefore, on October 5, 2018 Plaintiff informed Defendant that he is legally blind and unable to fully comprehend Defendant's Website with his screen reader software. Plaintiff requested that Defendant provide its Website in a fully accessible format so that the Website would be accessible to the Plaintiff (i.e.: make its Website accessible for the visually impaired). Plaintiff made this request via U.S. mail service. This request is attached hereto as Exhibit A.

35.   Defendant never responded to Plaintiff's request for accommodation.

36.   On November 1, 2018, Plaintiff again visited the www.libertybocc.com website in order to become informed of Defendant's legislative policies, services and activities. Defendant's response to Plaintiff's letter did not result in its Website becoming accessible to Plaintiff. Unfortunately, Plaintiff was still unable fully comprehend the Website content provided therein.

37.   By Defendant's failure to make its Website fully accessible, Plaintiff has

---

[5] "Universal design is the design of products and environments to be usable by all people, to the greatest extent possible, without the need for adaption or specialized design." Kalbag, Laura (2017), by *Accessibility for Everyone*, (p. 5)

[6] 

suffered shame, humiliation, isolation, segregation, experienced emotional suffering, pain and anguish and has been segregated and prohibited from enjoying the programs/ services offered by Defendant to the public.

38.   Plaintiff continues to desire to become informed about the governmental functioning of Liberty County and partake in the programs, services, and activities of Liberty County as a resident of the state of Florida and as a visitor to Liberty County. However Plaintiff continues to be harmed due to Defendant's inaccessible Website.

39.   Furthermore, Defendant has not provided any other auxiliary aid or service which would assist Plaintiff and/or similarly situated blind or visually impaired constituents to meaningfully access and fully comprehend the online content available to the public through Defendant's Website.

40.   Because Defendant's Website is not provided in a fully accessible format for the blind and visually impaired, Plaintiff has been prevented from reading its Website in order to become informed about Liberty County's governmental functioning, policies, programs/ services as Defendant offers to the public because of his vision disability.  As such, Plaintiff was left excluded from participating in Liberty County government and the community services, programs and activities offered by Liberty County in a manner equal to that afforded to others who are not similarly disabled.

41.   Plaintiff's inability to access Defendant's Website has resulted in a *virtual barrier* which has impaired, obstructed, hindered, and impeded Plaintiff's ability to become an involved citizen in Liberty County and learn about the programs and services available to residents and visitors of Liberty County.

42.   On information and belief, since October 5, 2018 (when Plaintiff first began to attempt to access and learn about Liberty County governmental functioning, programs,

and services) and continuing following Plaintiff's letter requesting accommodation, Defendant has not made reasonable modifications to its rules, policies and procedures to ensure future compliance with the ADA and/or the Rehabilitation Act. As of this filing, Defendant's Website remains inaccessible to Plaintiff as well as to other blind and visually disabled individuals.

43. Plaintiff (and others with vision impairments) will suffer continuous and ongoing harm from the Defendant's omissions, policies, and practices regarding its Website unless enjoined by this Court.

44. Defendant has engaged (and continues to engage) in unlawful practices in violation of Title II of the ADA (see 42 U.S.C. §12132) and Section 504.

45. Defendant's unlawful practices include (but are not limited to) denying Plaintiff access to (and participation in) Liberty County's programs, services, and governmental functions and policies, Defendant has denied Plaintiff the ability to participate in Liberty County programs, services, and government  in the same manner as provided to the sighted public.

46. Plaintiff has also been denied the ability to participate in the Liberty County community by Defendant's precluding Plaintiff's access to Liberty County's Website (which provides information on Defendant's programs and services) in the same manner as provided to the sighted public.

47. Defendant is deliberately indifferent to the provisions of the Rehabilitation Act and Title II of the ADA in regard to the unlawful practices described herein because Defendant is aware of the availability of computer programs which allow Defendant to provide its Website in an accessible format for the blind and visually impaired

community. Despite the ease and accessibility of providing an accessible Website, Defendant has failed to reasonably modify its policies, processes and procedures for the same.

48. As a result of Defendant's actions, Plaintiff has been damaged and has suffered injuries and shame, humiliation, isolation, segregation, experienced emotional suffering, pain and anguish.

49. For all of the foregoing, Plaintiff has no adequate remedy at law.

50. Plaintiff has been obligated to retain the civil rights law firm of Scott R. Dinin, P.A. for the filing and prosecution of this action and has agreed to pay a reasonable attorney fee. Plaintiff is entitled to have reasonable attorneys' fees, costs and expenses paid by Defendant Liberty County.

## COUNT I – VIOLATIONS OF TITLE II OF THE ADA

51. The broad mandate of the ADA is to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life and that mandate extends to public entities including Defendant and the Website Defendant provides to the public.

52. The Department of Justice guidelines on the application of Title II of the ADA state:

> [T]he Department has taken the position that title II covers Internet Web site access. Public entities that choose to provide services through web-based applications (e.g., renewing library books or driver's licenses) or that communicate with their constituents or provide information through the Internet must ensure that individuals with disabilities have equal access to such services or information, unless doing so would result in an undue financial and administrative burden or a fundamental alteration in the nature of the programs, services, or activities being offered. 28 C.F.R. Pt. 35 app. A.

53. Title II of the ADA mandates that no qualified individual with a disability

shall, by reason of such disability, be excluded from full and equal participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity, 42 U.S.C. § 12132.

54.   Defendant Liberty County is public entity. 42 U.S.C. §12131(1)(A) states that a public entity is subject to Title II of the ADA.  As a public entity, Defendant must:

a)   Provide full and equal enjoyment of its services, programs, and activities in the most integrated setting appropriate to people with disabilities. 42 U.S.C. §12131, *et. seq.*; 28 C.F.R. §35.130(a).

b)   Ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals unless the public entity can demonstrate that taking those steps to modify policies, practices, or procedures would fundamentally alter the nature of the service, program, or activity; 28 C.F.R. §35.130(b)(7).

c)   Ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals unless the public entity can demonstrate that legitimate safety requirements are necessary for safe operation. Any safety requirements must be based on actual risks and not on mere speculation, stereotypes, or generalizations about individuals with disabilities; 28 C.F.R. §35.130(h).

55.   Defendant's Website is a program, service, or activity within the definition of Title II of the ADA. Defendant makes its Website available wherein which the public can access said information.

56.   Defendant failed to provide its Website in a format accessible to individuals who are visually impaired who require screen reader software to comprehend that

Website.

57. By denying Plaintiff the opportunity to comprehend and benefit from its Website due to Plaintiff's disability (visual impairment), Defendant has denied Plaintiff the opportunity to participate in or benefit from the services, programs or activities afforded to non-disabled persons and persons who are not visually impaired.

58. Providing a Website in a format that can be recognized by screen reader software and thereby making that Website accessible to the visually impaired would not result in any undue burden to Defendant and would not fundamentally change the nature of Defendant's services, programs, or activities.

59. Defendant is required to provide full and equal enjoyment of its services, programs, and activities in the most integrated setting appropriate to people with disabilities. 42 U.S.C. §12131, *et. seq.*; 28 C.F.R. Part 35.

60. As a result of the virtual barriers within the Website provided by Defendant, visually impaired individuals are denied the full and equal access to the government functions, services, programs, and activities offered by Liberty County in a manner equal to that afforded to others; in derogation of Title II of the ADA and Section 504.

61. As a public entity, Defendant may not (directly or through contractual or other arrangements) utilize methods of administration that deny individuals with disabilities access to its services, programs, and activities or perpetuate the discrimination of another public entity; 28 C.F.R. § 35.130(b)(3).

62. As a public entity and pursuant to Title II, Defendant is required to make reasonable modifications in its policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of

the service, program, or activity; 28 C.F.R. § 35.130(b)(7).

63.  Defendant is required to present the Website it provides to the public in an accessible format in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability.

64.  Defendant's failure to make its Website accessible has impeded Plaintiff from fully accessing the programs, services, and activities of Liberty County as offered to residents and visitors so that they can participate in the services and programs of Liberty County and equal access to Liberty County government as afforded to the public by Liberty County. By such failure, Defendant has discriminated against the visually impaired.

65.  Defendant is blatantly discriminating by its failure to provide an accessible Website for blind and visually impaired citizens. Defendant has violated Title II of the ADA in numerous ways, including discriminatory action which occurred when the Defendant failed to maintain policies and procedures to ensure compliance with Title II of the ADA by creating barriers for individuals with disabilities who are visually impaired and who require the assistance of interface with screen reader software to comprehend and access Defendant's Website. These violations are ongoing.

66. As a result of Defendant's inadequate creation, development, and administration of Defendant's Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 to remedy the discrimination.

## COUNT II – VIOLATION OF SECTION 504 OF THE REHABILITATION ACT

67.  Plaintiff is legally blind, which substantially limits him in his major life activities.  Therefore, Plaintiff is a qualified individual with a disability under Section 504 of the Rehabilitation Act.

68.   In *Nat'l Ass'n of Deaf v. State*, No. 18-cv-21232, 2018 WL 3722936, at *5 (S.D. Fla. June 18, 2018)(citing Cash v. Smith, 231 F.3d 1301, 1305 (11th Cir. 2000) the court found that "[t]he elements of a Title II claim and a section 504 Rehabilitation Act claim are the same," and can be addressed together.

69.   As a qualified individual, Plaintiff is expressly authorized under Section 505 of the Rehabilitation Act which enforces Section 504 of the Rehabilitation Act, 29 U.S.C. §§ 794 & 794(a), incorporating the remedies, rights and procedures set forth in Section 717 of the Civil Rights Act of 1964, including the application of §§ 706(f) - (k), 42 U.S.C. §§ 2000e (5)(f) - (k).

70.   On information and belief, Defendant is a recipient of federal financial assistance. The Liberty County Commissioners distribute that federal financial assistance to its agencies and departments through its budgetary and legislative activities. As the distributor of federal financial assistance, all of the operations of the Liberty County Commissioners (including Defendant's Website) are subject to the Rehabilitation Act as a covered program or activity.  29 U.S.C. §794(b)(1)(B).

71.   Congress enacted the Rehabilitation Act in 1973 to enforce the policy of the United States that all programs, projects, and activities receiving federal assistance "… be carried out in a manner consistent with the principles of . . . inclusion, integration, and full participation of the individuals [with disabilities]." 29 U.S.C. §701(c)(3).

72.   Section 504 of the Rehabilitation Act prohibits recipients of federal funding from discriminating against disabled persons and requires that programs or activities operated by a federally-funded entity be readily accessible to persons with disabilities; see 28 C.F.R. §42.520.

73.   Section 504 of the Rehabilitation Act, 29 U.S.C. §794 requires that no

qualified individual with a disability, on the basis of that disability, be excluded from participation in or be denied the benefit of the services, programs, activities, or to otherwise be discriminated against.

74.   The Rehabilitation Act defines "program or activity" to mean all of the operations of a department, agency, special purpose district, or other instrumentality of a State or of a local government. As Defendant is a local government, Defendant's creation, storage and providing a Website is a within the meaning of the Rehabilitation Act; 29 U.S.C. §794(b)(1)(A).

75.   This denial of access to Defendant's services, programs and/or activities has subjected Plaintiff to discrimination, excluded Plaintiff from participation in those services, programs and/or activities and denied Plaintiff the benefits of Defendant's Website.

76.   As of this filing, Defendant's Website remains inaccessible to persons with screen readers who are blind and/or low sighted but are accessible to persons without vision disabilities.

77.   Specifically, as related to violations of Section 504, blind and visually impaired individuals need to comprehend and access the Website which Defendant provides to the public. Yet, Defendant's Website does not interface with screen reader software so that blind and visually impaired individuals are able to comprehend it.

78.   As a distributor/recipient of federal funds and pursuant to Section 504 the Defendant may not deny a qualified handicapped person the opportunity to participate in or benefit from the aid, benefit, or service; 45 CFR §84.4(b)(1)(i).

79.     As a distributor/recipient of federal funds and pursuant to Section 504 the Defendant may not afford a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others; 45 CFR §84.4(b)(1)(ii).

80.     As a distributor/recipient of federal funds and pursuant to Section 504 the Defendant may not provide a qualified handicapped person with an aid, benefit, or service that is not as effective as that provided to others; 45 CFR §84.4(b)(1)(iii).

81.     As a distributor/recipient of federal funds and pursuant to Section 504 the Defendant may not provide different or separate aid, benefits, or services to handicapped persons or to any class of handicapped persons unless such action is necessary to provide qualified handicapped persons with aid, benefits, or services that are as effective as those provided to others; 45 CFR §84.4(b)(1)(iv).

82.     Plaintiff has been denied the ability to comprehend Defendant's Website, which would permit Plaintiff to access the programs and services of Liberty County and to participate in the Liberty County government as offered to residents and visitors.  As a distributor/recipient of federal funds and pursuant to Section 504, Defendant may not otherwise limit a qualified handicapped person in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit, or service; 45 CFR §84.4(b)(1)(vii).

83.     As a distributor/recipient of federal funds and pursuant to Section 504, Defendant may not (directly or through contractual or other arrangements) utilize criteria or methods of administration (i) that have the effect of subjecting qualified handicapped persons to discrimination on the basis of handicap, (ii) that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the recipient's

16

program or activity with respect to handicapped persons, or (iii) that perpetuate the discrimination of another recipient if both recipients are subject to common administrative control or are agencies of the same State; 45 CFR §84.4(b)(4).

84.     As a distributor/recipient of federal funds and pursuant to Section 504, Defendant is required to evaluate (with the assistance of interested persons including handicapped persons or organizations representing handicapped persons) its current policies and practices and the effects thereof that do not or may not meet the requirements of this part; 45 CFR § 84.6 (c)(1)(i).

85.     As a distributor/recipient of federal funds and pursuant to Section 504, Defendant is required to modify, after consultation with interested persons (including handicapped persons or organizations representing handicapped persons), any policies and practices that do not meet the requirements of this part; 45 CFR § 84.6 (c)(1)(ii).

86.     As a distributor/recipient of federal funds and pursuant to Section 504, Defendant is required to take, after consultation with interested persons (including handicapped persons or organizations representing handicapped persons), appropriate remedial steps to eliminate the effects of any discrimination that resulted from adherence to these policies and practices; 45 CFR § 84.6 (c)(1)(iii).

87.     As a distributor/recipient of federal funds and pursuant to Section 504, Defendant is required to designate at least one person to coordinate its efforts to adopt grievance procedures that incorporate appropriate due process standards and that provide for the prompt and equitable resolution of complaints alleging any action prohibited by this part; 45 CFR § 84.7 (a) & (b).

88.     Defendant has discriminated against Plaintiff (and other individuals with visual impairments) in the unequal provision of a Website which Defendant provides to the

public.  As a result, Plaintiff has experienced exclusion, segregation, mental anguish, and humiliation in violation of his civil rights.

89.     Defendant's policies, practices and procedures, particularly the actions and omissions described above have violated Plaintiff's rights under Section 504 by discriminating on the basis of a disability.

90.     As a public entity, Defendant knows or should know of the guidelines provided by the Department of Justice related to providing information to the public in accessible format.

91.     Defendant has failed to act on the likelihood of harm each time it has augmented or uploaded new information on its Website without addressing the accessibility of its Website for blind and visually impaired individuals, it has demonstrated deliberate indifference to providing access to its services, programs and/or activities for blind and visually impaired individuals.

92.     Deliberate indifference plainly requires more than gross negligence *Loeffer v Staten Island Univ. Hosp.,* 582 F.3d 268, 275 (2nd Cir. 2009) .  Deliberate indifference is a deliberate choice *Bozeman v Orum*, 422 F.3d 1265, 1271 (11th Cir. 2005).

93.     Defendant clearly has made a choice on a daily basis in failing to provide effective communication (vis a vie its Website). Defendant's deliberate choice has demonstrated deliberate indifference (standard) thus showing deliberate indifference.

94.     By Defendant's failure to make its Website accessible or to otherwise respond to Plaintiff's request for accommodation in a meaningful manner (as request was sent via U.S. mail to Defendant on October 5, 2018) Defendant's actions further reflect Defendant's deliberate indifference to the rights of the Plaintiff based on Plaintiff's disability.

95.     While in this instance Plaintiff requested accommodation from Defendant, no request for an accommodation is necessary to plead a claim for failure to accommodate where the need for such an accommodation is obvious. See *Wilson v. Broward Cty.,* No. 04-61068, 2006 WL 8431515, at *3 (S.D. Fla. Jan. 13, 2006)(denying a motion to dismiss in a Title II case where plaintiff claimed that his need for accommodation was obvious).

96.     The ongoing and continuous act of failing to provide effective communication (related to the operation and maintenance of Defendant's Website) goes beyond gross negligence. Thus, Defendant is in violation of Section 504 of the Rehabilitation Act. See: *Liese v. Indian River County Hosp. Dist.*, 701 F.3d 334, (11th Cir. 2012).

97.     The standard for deliberate indifference as set forth in *Liese v Indian River County Hospital District*, No. 10-15968 (11th Cir. Nov 13, 2012) "[D]eliberate indifference defined in the context as occurring when "the defendant knew that harm to a federally protected right was substantially likely and failed to act on that likelihood" (the *Liese* court, quoting from *T.W. ex.rel. Wilson v. Sch. Bd of Seminole Cnty., Fla*., 610 F.3d at 604 (11th Cir.2010); accord *Loeffler v. Staten Island Univ. Hosp*., 582 F.3d 268, 275 (2d Cir.2009)); *Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1228–29 (10th Cir.2009); *Duvall v. Cnty. Of Kitsap*, 260 F.3d 1124, 1139 (9th Cir.2001); see Fig. 1



Fig. 1

98.     Plaintiff has met the standard for deliberate indifference established in *McCollum v Orlando Reg'l Healthcare Sys., Inc.,* 768 F.3d 1135, 1147 (11th Cir 2014): "a plaintiff must show that the defendant 'knew that harm to a federally protected right was substantially likely' and 'failed to act on that likelihood.'" (emphasis omitted) (quoting *Liese*, 701 F.3d at 344), which standard was instrumental in the 11th Circuit Court of Appeals decision in favor of the deaf defendant Harold Crane to find that Palmetto General Hospital had intentionally discriminated against the plaintiff, reversing summary judgment on plaintiff's claim of ineffective communication during involuntary commitment proceeding under deliberate indifference standard (*Crane v. Lifemark Hosps., Inc.*, 898 F.3d 1130, 1135-36 (11th Cir. 2018).

99.     As a result of Defendant's actions, Plaintiff has been damaged and has suffered injuries and shame, humiliation, isolation, segregation, experienced emotional suffering, pain and anguish and has been segregated and prohibited from enjoying the programs/ services offered by Liberty County to residents and visitors (based on knowledge obtained through its Website) and in participating in the government of  Liberty County.

100.     An award of monetary damages under Section 504 requires showing of intentional discrimination/deliberate indifference. *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001). "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely [knowledge that an accommodation is required], and a failure to act upon that likelihood." *Id*. at 1139; *Lovell v. Chandler,* 303 F.3d 1039, 1056 (9th Cir. 2002).

101.    Plaintiff is entitled to damages pursuant to Section 504 because of Defendant's deliberate indifference to the inaccessibility of the Website it provides to the public despite Plaintiff's request for accommodation.

102.    Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action.  Plaintiff is entitled to have reasonable attorneys' fees, costs and expenses paid by Defendant.

103.    For all of the foregoing, Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Andres Gomez hereby demands judgment against Defendant Liberty County including a declaratory judgment, pursuant to Rule 57 of the FRCP stating that the Defendant's practices, policies, and procedures have subjected Plaintiff to discrimination in violation of Title II of the ADA and Section 504 of the Rehabilitation Act to permanently enjoin Defendant Liberty County from any practice, policy and/or procedure which will deny Plaintiff equal access to the services, programs and activities offered by Defendant Liberty County to residents and visitors and in participating in the government of Liberty County, as well as:

a)    issue a declaratory judgment that Defendant has violated the Plaintiff's rights as guaranteed by Title II of the ADA and Section 504 of the Rehabilitation Act;

b)    The Court enter an Order requiring Defendant to update its Website to interface with screen reader software in order that individuals with visual disabilities can access that Website to the full extent required by Title II of the ADA and Section 504 of the Rehabilitation Act;

c)   Pursuant to 42 U.S.C. §12188(a)(2), the Court enter an Order for permanent injunction which directs Defendant to take all steps necessary to bring its Website into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that it is fully accessible to, and independently usable by, blind and low sighted individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law;

d)   The Court require Defendant engage a (mutually agreed upon) Consultant to perform an automated accessibility audit on a periodic basis to evaluate whether Defendant's Website to be accessible to individuals with visual disabilities who require screen reader software to comprehend internet content;

e)   award damages in an amount to be determined at trial;

f)   award Plaintiffs' reasonable litigation expenses and attorneys' fees; and

g)   award such other and further relief as it deems necessary, just and proper.

Dated this 1st day of November 2018.

Respectfully submitted,

*s/Scott Dinin*
Scott R. Dinin, Esq.
Scott R. Dinin, P.A.
4200 NW 7th Avenue
Miami, Florida 33127
Tel: (786) 431-1333
inbox@dininlaw.com
*Counsel for Plaintiff*